UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA ALLEN BAUSCH, | 4:22-CV-04026-KES |
| Petitioner, | |
| vs. | REPORT AND RECOMMENDATION |
| DANIEL SULLIVAN,  THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, BRENT FLUKE, WARDEN; | |
| Respondents. | |

## INTRODUCTION

This matter is pending before the court pursuant to the *pro se* petition and amended petition pursuant to 28 U.S.C. § 2254 of Joshua Allen Bausch, a person incarcerated pursuant to a judgment of a South Dakota state court. See Docket Nos. 1 & 10.  Now pending is respondent's motion for judgment on the pleadings without holding an evidentiary hearing.  See Docket No. 4. Mr. Bausch opposes the motion.  See Docket No. 11.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Court Judge.

## FACTS

### A.    Trial Court

Following a jury trial, Mr. Bausch was convicted in state court of four counts of first-degree rape and two counts of sexual contact with a child under

the age of 16 based on two separate incidents with the same victim.  One occurred in December in a trailer home and the second in the following March in a hotel room.  <u>See</u> Docket No. 5-1.  He was sentenced with a combination of concurrent and consecutive sentences on the six counts so that his effective sentence was for 40 years.  <u>Id.</u>

**B.    First Direct Appeal and Remand**

Mr. Bausch filed a direct appeal, contesting (1) the sufficiency of the evidence, (2) the allegedly cruel and unusual nature of his sentence, (3) limitations imposed by the court on introducing evidence that the victim made statements about harming herself, (4) the court's jury instructions, and (5) his convictions for both rape and sexual contact on double jeopardy grounds.  <u>State v. Bausch</u>, 889 N.W.2d 404, 408 (2017) ("<u>Bausch I</u>").  The court agreed with Mr. Bausch as to the double jeopardy argument and ordered that the sexual contact convictions be vacated, the case reversed and remanded for resentencing.  <u>Id.</u> at 411-13, 415.  The court affirmed in all other respects, including affirming the convictions and sentencings for the four first-degree rape counts.  <u>Id.</u> at 415.

On remand, the trial court vacated the sexual contact convictions and found Mr. Bausch not guilty of these counts.  Docket No. 5-3 at p. 2.  The court then imposed the same effective 40-year sentence on Mr. Bausch on the remaining rape convictions.  <u>Id.</u>  Mr. Bausch then filed a motion for a new trial before the state circuit court, which that court denied.  <u>State v. Bausch</u>, 905 N.W.2d 314, 315 (S.D. 2017) ("<u>Bausch II</u>").

C.    **Second Direct Appeal**

Following resentencing, Mr. Bausch appealed again to the South Dakota Supreme Court, arguing the trial court erred in refusing his request for a new trial.  Id.  The court rejected Mr. Bausch's appeal, holding that when the scope of remand is limited—as it was in Bausch I—the circuit court has authority only insofar as is necessary to carry out the appellate court's mandate.  Id. at 319.  Thus, the circuit court did not have the power, after remand in Bausch I, to hold a new trial, but was authorized only to vacate the two improper convictions and resentence Mr. Bausch.  Id.

D.    **State Habeas Proceedings**

Mr. Bausch timely filed a habeas petition in state circuit court.  Docket No. 5-5.  Habeas counsel was appointed for Mr. Bausch, who then filed an amended petition on his behalf.  Docket No. 5-6.  In his petition he raised three claims:

1.    trial counsel was ineffective for failing to seek dismissal or acquittal on the sexual contact charges, resulting in prejudice due to Mr. Bausch facing a greater number of charges before the jury;

2.    trial counsel was ineffective for failing to investigate in three ways:

    a.    counsel failed to interview witnesses present during the two events;

    b.    counsel failed to consult with and call at trial an expert witness to testify regarding child testimony and suggestibility

    c.    counsel failed to investigate the height and weight of the victim's bed as it pertained to Mr. Bausch.

3.    trial counsel's work load exceeded the ABA recommended limits,

which prevented counsel from spending the necessary time on Mr. Bausch's case and providing effective representation of counsel.

Docket No. 5-6 at p. 2.

The state habeas court held an evidentiary hearing, allowed the parties to submit post-hearing briefs, and then issued a 15-page opinion denying habeas relief. Docket No. 5-7. The habeas court's analysis and findings of fact are discussed in greater detail in the DISCUSSION section, *infra*, of this opinion.

Following the denial of habeas relief by the circuit court, Mr. Bausch timely sought a certificate of probable cause from the circuit court, which denied the request. He then timely sought a certificate of probable cause from the supreme court, which also denied the request.

**E.    Mr. Bausch's Federal Habeas Petition**

Mr. Bausch timely[1] filed his § 2254 petition with this court alleging the following grounds for relief:

1.    Ineffective assistance of counsel for failing to investigate and interview witnesses present at the scene of the crime in December, especially Celena Ackerman.

2.    Ineffective assistance of counsel for failing to call Celena Ackerman as a witness at trial.

3.    Ineffective assistance of counsel for failing to impeach the victim with her prior inconsistent statements.

4.    Ineffective assistance of counsel for failing to investigate the scene of the alleged rape in December, including the layout of the trailer house, the size of the victim's bunkbed relative to Mr. Bausch's size, and the location of nearby witnesses.

---

[1] AEDPA contains a one-year statute of limitations. See 28 U.S.C. § 2254(d). Mr. Bausch filed his § 2254 petition on February 16, 2022, less than a year after the South Dakota Supreme Court denied habeas relief.

4

Docket No. 1 at pp. 6-19.  Respondents now move for judgment on the

pleadings, arguing that the state habeas court's decision was neither an

unreasonable application of federal law nor were its findings of facts lacking

support in the record.  <u>See</u> Docket Nos. 4 & 5.  Mr. Bausch resists.  Docket

No. 11.

**DISCUSSION**

**A.    Scope of a § 2254 Petition**

A state prisoner who believes he is incarcerated in violation of the

Constitution or laws of the United States may file a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The Anti-Terrorism and Effective Death Penalty

Act (AEDPA) constrains federal courts to exercise only a "limited and deferential

review of underlying state court decisions."  <u>Osborne v. Purkett</u>, 411 F.3d 911,

914 (8th Cir. 2005).  A federal court may not grant a writ of habeas corpus

unless the state court's adjudication of a claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established

Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to"

clearly established federal law if it "applies a rule that contradicts the governing

law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are

materially indistinguishable from a decision of th[e] Court and nevertheless

arrives at a result different from [the Court's] precedent."  <u>Williams v. Taylor</u>,

529 U.S. 362, 405-06, (2000).  "A federal habeas court may not issue the writ

simply because [it] concludes . . . the relevant state-court decision applied

5

clearly established federal law erroneously or incorrectly." Id. at 411.  "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The state court's factual findings "are presumed to be correct," and a "federal habeas court 'may not disregard this presumption unless' " specific statutory exceptions are met.  Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998) (quoting Thompson v. Keohane, 516 U.S. 99, 110 (1995)); 28 U.S.C. § 2254(e).  A federal habeas court must "more than simply disagree with the state court before rejecting its factual determinations.  Instead, it must conclude that the state court's findings lacked even 'fair support' in the record."  Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

**B.    Judgment on the Pleadings Standard**

This court recently addressed the proper standard applicable to motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c):

> Courts deciding a Rule 12(c) motion are required to accept as true the well-pled allegations and must resolve all inferences in the non-moving parties' favor.  Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006).  However, this tenet does not apply to legal conclusions, "formulaic recitation of the elements of a cause of action," or factual assertions which are so indeterminate as to require further factual enhancement.  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). . . .  When considering a motion for judgment on the pleadings, a court generally must ignore all materials outside the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  However, courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings."  Id.

Union Ins. Co. v. Scholz, 473 F. Supp. 3d 978, 982 (D.S.D. 2020) (Piersol, J.). The main difference between a motion to dismiss under Rule 12(b)(6) asserting plaintiff has failed to state a claim and a motion under Rule 12(c) is timing:  a

6

Rule 12(b)(6) motion must be made before an answer is filed while a Rule 12(c)

motion can be made after the pleadings have closed.  Id. at 981.

    Here, in addition to the pleadings filed in federal court, the court has also

taken judicial notice of the underlying criminal and habeas files in South

Dakota state court concerning Mr. Bausch.  Cullen v. Pinholster, 563 U.S. 170,

181-82 (2011) (finding review under § 2254(d)(1) requires review of the state-

court record).

## C.    Ineffective Assistance of Counsel Standard

    The Sixth Amendment of the Constitution of the United States affords a

criminal defendant with the right to assistance of counsel.  U.S. Const.

amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the

right to the effective assistance of counsel.' "  Strickland v. Washington, 466

U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14

(1970)).  Strickland is the benchmark case for determining if counsel's

assistance was so defective as to violate a criminal defendant's Sixth

Amendment rights and require reversal of a conviction.  Id. at 687.

    "When a convicted defendant complains of the ineffectiveness of

counsel's assistance, the defendant must show that counsel's representation

fell below an objective standard of reasonableness."  Id. at 687-88.  The

defendant must also show that counsel's unreasonable errors or deficiencies

prejudiced the defense and affected the judgment.  Id. at 691.  The defendant

must show "there is a reasonable probability that, absent the errors, the

factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In

sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or death sentence
> resulted from a breakdown in the adversary process that renders the
> result unreliable.

Id.

"There is a presumption that any challenged action was sound trial

strategy and that counsel rendered adequate assistance and made all

significant decisions in the exercise of professional judgment." Hall v.

Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotations omitted).  It is the

petitioner's burden to overcome this presumption, and a "petitioner cannot

build a showing of prejudice on a series of errors, none of which would by itself

meet the prejudice test." Id.

Counsel's conduct must be judged by the standards for legal

representation which existed at the time of the representation, not by

standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S.

4, 7-9 (2009). " 'American Bar Association standards and the like' are 'only

guides' to what reasonableness means, not its definition." Id. at 8 (quoting

Strickland, 466 U.S. at 688)).

The Supreme Court distinguishes between those cases in which the new

evidence "would barely have altered the sentencing profile presented to the

sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quotation omitted). In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 40-41 (internal quotation omitted, cleaned up). It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quotation omitted).

Finally, "[i]neffective assistance of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective." Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003). However, " 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of §2254(d).' " Id. (citing Strickland, 466 U.S. at 698). That is, "[a] state court's findings of fact are entitled to a presumption of correctness." Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002). Additionally, "[j]udicial scrutiny of counsel's performance must be highly deferential," with "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Strickland, 466 U.S. at 698.

Where a claim of ineffective assistance of counsel is made in a § 2254 petition, the already deferential standard of review of counsel's conduct is

paired with the extremely deferential standard of review applicable to federal court review of a state court's rejection of a habeas claim to make the federal court's "highly deferential" review "doubly" so. Harrington v. Richter, 562 U.S. 86, 105 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. The inquiry when a Strickland claim is raised in a § 2254 petition is "whether there is any reasonable argument that counsel satisfied Stickland's deferential standard." Id. The court now turns to each of Mr. Bausch's assertions that counsel was ineffective.

**D.    Application of the Law to Mr. Bausch's Claims**

### 1.    Failure to Investigate and Interview Witnesses; Failure to Call Celena Ackerman as a Defense Witness at Trial[2]

Although Mr. Bausch alleges counsel had the names of all the witnesses present at the scene of the crimes and failed to contact any of them, Mr. Bausch only discusses one witness: Celena Ackerman. Ms. Ackerman was present at the scene of the December event. Had trial counsel contacted Ms. Ackerman, Mr. Bausch alleges counsel would have discovered that Ms. Ackerman would have testified she was present in December, had a direct line of sight to Mr. Bausch's bedroom door, and that he never left his bedroom all night after he retired, contrary to the victim's testimony. Docket No. 1 at p. 7.

---

[2] The court combines grounds 1 and 2 from Mr. Bausch's § 2254 petition as both focus on the fact that counsel did not discover Celena Ackerman as a witness and present her testimony at trial.

Mr. Bausch's petition focuses his claim on his attorney's alleged malfeasance and does not address the state habeas court's decision.  Id. However, in his memorandum in opposition to respondent's motion to dismiss he attacks both the state court's findings of fact as well as application of law. Docket No. 11 at pp. 12-22.  Accordingly, the court addresses both.

### a.    The State Court's Factual Findings Are Supported

Again, the applicable standard under § 2254 that this court must apply to the evaluation of state habeas court fact findings requires acceptance of the state court findings unless they "lack[ ] even 'fair support' in the record." Marshall, 459 U.S. at 432.  The court finds Mr. Bausch fails to carry the burden of demonstrating that the state court's findings lacked support in the evidence presented.

At the state habeas hearing, Ms. Ackerman testified she was present at the scene of the December crime, she stayed up all night and never saw Mr. Bausch leave his bedroom after he retired for the evening.  Docket No. 5-7 at p. 8.[3]  She also testified she did not see anyone enter or leave the victim's bedroom that night and that she had an unobstructed view of every room down

---

[3] Each factual finding discussed in the text of the opinion comes from the state habeas court's written opinion.  That finding is indexed by a footnote (this one and the ones following) with reference to the corresponding transcript from the state habeas hearing.  The underlying evidentiary record supports the state habeas court's finding unless otherwise noted.  Support for the finding of Ms. Ackerman's testimony: Bausch v. Young, Civ. 18-158 at pp. 222, 226-27 (S.D. Circuit Court) (page 16 & 19-20 of the habeas evidentiary hearing (HH) transcript).

the hall.  Id. at pp. 8, 9-10.[4]  She also testified no one contacted her about

Mr. Bausch's case until after he had been sentenced.  Id. at p. 8.[5]

Trial counsel testified at the state habeas hearing that she had

interviewed Rosalina ("Rosa") Bauer, who was present at the scene in December

and that Ms. Bauer told counsel Celena Ackerman ("Cici") was also present.

Id.[6]  However, trial counsel never contacted Ms. Ackerman.  Id.[7]

Mr. Bausch also testified at the state hearing and stated he knew

Ms. Ackerman was present at the scene, that he could have obtained her

contact information, but that—at the time—he did not think it was necessary

to talk to Ms. Ackerman.  Id.[8]  Mr. Bausch did not tell trial counsel that

Ms. Ackerman was a key witness or someone who should be interviewed.  Id.

Mr. Bausch writes in his memo in opposition to respondent's motion that

the state court was wrong in determining that counsel did not know

Ms. Ackerman was an important witness.  Docket No. 11 at p. 12.  He writes

that "petitioner told trial counsel that Ms. Ackerman was one of the people at

the trailer the night in December."  Id.  Furthermore, he asserts there were only

nine people in the trailer that night and it would not be unreasonable to expect

counsel to talk to each of them.  Id.

---

[4] Id. at p. 225 (HH p. 18).

[5] Id. at p. 229 (HH p. 22).

[6] Id. at p. 245-49 (HH p. 38-42).

[7] Id. at p. 249-50 (HH p. 42-43).

[8] Id. at p. 336, 342 (HH at p. 129, 136).

The question under § 2254 is whether the state habeas court's findings of fact were supported by the record before it.  This court is limited to reviewing what the state court reviewed—Mr. Bausch's then-testimony that he did not mention Ms. Ackerman because he did not think it important to get her testimony—to determine if the state court's findings are supported by the record.

Mr. Bausch's girlfriend, Becky, was actually in the same bedroom with Mr. Bausch on the night of the December event.  Id.  Mr. Bausch insisted that Becky be called as a defense witness at trial, even though she had previously told police that Mr. Bausch had left their bedroom the night of the December event, which corroborated the victim's testimony.  Id. at pp. 8-9.  Becky testified at the trial that she could not recall Mr. Bausch leaving the room on the night in question.  Id. at p. 9.

The state habeas court found Ms. Ackerman's credibility to be "low" because she would have been subject to impeachment by other witnesses' testimony, including petitioner's own testimony.  Id.  For example, Mr. Bausch himself testified he did leave his bedroom during the night to use the bathroom, which contradicted Ms. Ackerman's testimony that he never left the bedroom.  Id. at p. 10.[9]  Mr. Bausch also testified there was a jog in the hallway so that someone sitting in the living room as Ms. Ackerman was would

---

[9] Id. at 327 (HH at 120).  In addition, Becky had told police that Mr. Bausch got out of bed that night to go smoke a cigarette and Rosa similarly told police that someone had exited from Mr. Bausch's bedroom on the night in question.  Id. at p. 234 (HH p. 27).

be unable to see all the way down the hallway, while Ms. Ackerman testified she had a view of the entire hallway. Id.[10]

Another example of Ms. Ackerman's inconsistent testimony was that she stated the victim's sister slept in the same bedroom with the victim. Id. [11] This contradicted every other witness's testimony, including Becky's, who all stated the victim slept in her bedroom alone and the sister slept in the living room. Id.[12]

The state habeas court found that Ms. Ackerman's testimony that she was awake all night and constantly observed the hallway to be "questionable." Id. at p. 9. Finally, the court pointed out that the inconsistencies in Ms. Ackerman's testimony as compared to the testimony of other witnesses called her testimony "into question," especially since the testimony came "approximately seven years after the incidents." Id. at p. 10.

As indicated in the footnotes to the above discussion, the state habeas court's findings of fact were amply supported by the evidentiary record. In particular, the court's finding that Ms. Ackerman's credibility was "low" is generously supported by the evidence presented. Ms. Ackerman's testimony was contradicted by every non-party witness who testified in some way or another. Most importantly, her testimony on the key issue of her ability to see down the entire hallway and to verify that no one entered or exited from any

---

[10] Id. at p. 325-28 (HH at p. 118-21).

[11] Id. at p. 223, 231 (HH p. 16, 24).

[12] Id. at p. 231 (HH at p. 24).

bedroom down the hall was contradicted by Mr. Bausch himself, who testified a jog in the hallway obstructed a complete view and that he *did* leave his bedroom at some point after retiring so that he could use the bathroom. Mr. Bausch has failed to demonstrate that the state habeas court's factual findings lacked even fair support in the record.

### b.    The State Court Reasonably Applied Federal Law

In its written opinion, the state habeas court identified the appropriate law (Strickland) and applied it to Mr. Bausch's claim. Docket No. 5-7 at pp. 5-6, 9-10. The court observed that even if counsel's performance was deficient and that Ms. Ackerman should have been interviewed prior to trial and her testimony presented at trial, Mr. Bausch had failed to demonstrate Strickland prejudice. The court concluded Ms. Ackerman's testimony, had it been presented, would not have changed the outcome of the trial—in other words, Mr. Bausch had not established prejudice. Id.

The court based this conclusion on the many inconsistencies in Ms. Ackerman's testimony when compared to the testimony of other witnesses concerning the layout of the hallway, whether Mr. Bausch left his room on the December night in question, and whether the victim slept in her bedroom alone. Id. at p. 9. Also, the court found Ms. Ackerman's testimony would have been weak and its probative value minimal because of the incredulous statement that she stayed awake all night and had the hallway under constant observation all night. Id.

15

Because the state court found no prejudice, Mr. Bausch's current assertion in his memo that he *did* tell counsel about Ms. Ackerman as a witness (Docket No. 11 at p. 12) plays no part in this court's decision. Mr. Bausch's current "testimony" goes only to the issue whether counsel *should have* interviewed Ms. Ackerman and presented her testimony at trial— in other words, Mr. Bausch's testimony goes to whether counsel's performance was deficient. Even assuming counsel's performance was deficient and she should have discovered and presented Ms. Ackerman's testimony, the state court found no prejudice as a result of that possible malfeasance.

Mr. Bausch takes issue with the state court's conclusion that Ms. Ackerman's testimony did not undermine confidence in the outcome of the trial. The court notes that this court is the third judge to review the evidence presented at Mr. Bausch's trial. The first court to have done so was the South Dakota Supreme Court in Bausch I. As noted above, one of the claims Mr. Bausch raised on appeal was the sufficiency of the evidence. Bausch I, 889 N.W.2d at 413. This issue required the Supreme Court to review all of the evidence adduced at trial. Id. Mr. Bausch argued on appeal that the lack of physical evidence of rape, the presence of numerous witnesses who saw and heard nothing, the meagre opportunity presented to commit the offenses, and the inconsistencies in the victim's testimony all pointed to a conclusion that there was insufficient evidence to convict him. Id. at 414. The appellate court disagreed and affirmed the conviction. Id.

This court is the third court to look at the entire trial record and conclude that there was sufficient evidence to support the conviction. This court is the second court asked to consider whether the introduction of Ms. Ackerman's testimony would have had the potential to upset the outcome of the trial. In this review, this magistrate judge is circumscribed by the standard of review imposed by § 2254.

"[T]he federal court may not grant habeas relief to a state prisoner merely 'because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' " Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003) (quoting Williams, 529 U.S. at 411). "Rather, that application must also be unreasonable." Williams, 529 U.S. at 411 (emphasis added). A petitioner under § 2254 "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). This court may grant habeas relief under the "unreasonable application" prong of § 2254 only where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. at 101.

It is not enough for this court to state that, given the same evidence, it might have reached a different legal conclusion. This court must reach the conclusion that *no* fairminded jurist could have reached the same decision

17

reached by the state habeas court.  Id.  This court cannot say that.  Reasonable jurists could differ on whether the introduction of Ms. Ackerman's testimony might have altered the balance at trial.  Because that is so, this court must leave undisturbed the legal conclusion of the state habeas court in Mr. Bausch's case, mindful that that court had the opportunity to judge firsthand Ms. Ackerman's credibility on the witness stand.

This court concludes that Mr. Bausch has failed to demonstrate that the state habeas court unreasonably applied federal law to his ineffective assistance of counsel claims regarding the testimony of Celena Ackerman.

## 2.    Failing to Impeach the Victim with Prior Statements

Mr. Bausch alleges in his third ground for relief that trial counsel was ineffective because she failed to impeach the victim through cross-examination. Docket No. 1 at p. 14.  The court notes that this allegation is not contained within Mr. Bausch's underlying state habeas petition.  See Bausch v. Young, Civ. 18-158 at p. 31.  However, evidence was introduced on this claim during the state habeas evidentiary hearing and the issue was argued in habeas counsel's post-hearing brief.  See id. at p. 358-59.  Furthermore, the state habeas court addressed the issue on the merits.  See Docket No. 507 at p. 12. Therefore, the issue is exhausted and the court addresses it on the merits.

As with the issue discussed above, Mr. Bausch's articulation of this claim in his petition simply focuses on his attorney's allegedly deficient performance.  In his memorandum in opposition, he attacks the state habeas

court's factual findings and legal conclusions.  Accordingly, the court addresses both prongs.

### a.    The State Habeas Court's Factual Findings are Supported

The state court's summary of the facts on this issue was brief.  The court began by noting that even Mr. Bausch acknowledged that trial counsel *had* addressed inconsistencies in the victim's statements.  Docket No. 5-7 at p. 12. Mr. Bausch's argument amounted to an assertion that those "inconsistencies should have received greater focus and should have been used to a greater extent to impeach her credibility."  Id.  Trial counsel's testimony was that she felt she had to tread gingerly in cross-examining the victim as the jury might be offended by an open attack on this child witness.  Id.

The hearing transcript supports the state habeas court's findings.  Trial counsel testified that she had to walk a fine line in cross-examining the victim. Bausch v. Young, Civ. 18-158 at p. 296-97 (HH at pp. 89-90).  On the one hand, counsel was suspicious of the victim's account because it did not match the typical child-molestation scenario.  Id.  Therefore, counsel did want to undermine the victim's credibility with the jury and pointed out prior inconsistent statements the victim had made.[13]  Id.  However, counsel was also conscious of the fact that the public generally wants to believe children when they make allegations of sexual contact and counsel did not want the jury to perceive counsel as unfairly attacking the child.  Id.

---

[13] The victim had given a prior videotaped statement to a forensic interviewer and had also testified at a pre-trial hearing to determine whether she was competent to testify at trial.

In addition to the above facts discussed by the state habeas court, this court notes that the victim was nine years old as of the time of the jury trial, seven years old at the time of the crimes charged.  State v. Bausch, CRI 13-3072 at pp. 844, 860 (Jury Trial Transcript (JTT) at Vol. II, pp. 65, 83).  Counsel attempted to cross-examine the victim regarding her statement to the forensic interviewer, but the victim could not recall talking to the interviewer, let alone recall the content of what was said.  Id. at pp. 870, 873, 875 (JTT Vol. II, pp. 91, 94, 96).  This court concludes that the state court's findings of fact are supported by the record.

### b.    The State Court Reasonably Applied Federal Law

In its written opinion, the state court characterized counsel's decision about the degree to which she would cross-examine the victim and the ferocity of that cross-examination to be a strategic trial decision.  Docket No. 5-7 at p. 12.  The court concluded that the error, if any, was not so serious as to raise questions about the reliability of the trial outcome.  Id.  Accordingly, the court denied habeas relief on this topic.

Although the state court cited only state court decisions in evaluating this claim, the state law is in accord with the federal law that has developed under Strickland.  "There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall, 296 F.3d at 692.  Here, the court does not have to guess whether counsel's actions were a matter of trial strategy—counsel explicitly stated it was.

In <u>Hall</u>, the Eighth Circuit held that the none of the following actions by defense counsel constituted a <u>Strickland</u> violation:  counsel's failure to introduce evidence showing that a critical witness was motivated to lie; counsel's failure to impeach a witness with a prior inconsistent statement; and counsel's failure to cross-examine witness with information gained from her medical records.  <u>Id.</u> at 693-98.  The court determined that counsel's actions conformed with sound trial strategy and that the impact of such evidence would have been minimal and non-prejudicial to the petitioner.  <u>Id.</u>

Here, counsel had properly investigated and pinpointed a number of discrepancies between the victim's statements given over time, including the fact that she had never used the words "sexual assault" to describe what happened until she testified in a courtroom.  Counsel had highlighted discrepancies between actions the victim stated Mr. Bausch did at various times as well as other details such as whether he climbed into her bunk bed with her or not, whether he performed oral sex or not, whether the victim was wearing jeans or shorts, etc.  Counsel did cross-examine the victim and other witnesses on these discrepancies, but felt she needed to do so carefully.

This is not a case where counsel's cross-examination was soft because counsel had failed to investigate and familiarize herself with the evidence.  Counsel knew the evidence thoroughly.  Rather, it was a case where counsel deliberately chose to soften her approach to cross-examining the victim because to do otherwise might backfire with the jury.  The court will not second-guess counsel's strategic decisions at this point with the benefit of

hindsight.  Neither does the court second-guess the state habeas court's legal conclusions.  The state court did not unreasonably apply federal law on the issue of the cross-examination of the victim.

Mr. Bausch cites to Driscoll v. Delo, 71 F.3d 701 (8th Cir. 1995), for the proposition that counsel's failure to thoroughly cross-examine the prosecution's eye witness should result in the granting of habeas relief.  Docket No. 11 at p. 28.  The court notes that Driscoll was decided before the Anti-terrorism and Effective Death Penalty Act (AEDPA) was enacted in 1996.  It is the restrictive provisions of AEDPA that apply to this court's review of the state habeas court decision in Mr. Bausch's case, not the more lenient pre-AEDPA standard.

Furthermore, Driscoll is inapposite factually.  In Driscoll, the witness in question who was not cross-examined on prior inconsistent statements was an adult male prisoner; thus, trial counsel did not have to consider the ramafications of harshly cross-examining a child witness.  Id. at 710-11.  Also, trial counsel in Driscoll, *unlike* trial counsel in Mr. Bausch's case, testified that his decision not to cross-examine the prosecution's witness was ***not*** a matter of trial strategy.  Id. at 710.  Driscoll does not change this court's conclusion. The state habeas court's application of federal law to this issue was not unreasonable.

### 3.    Failing to Investigate the Scene of the December Event

In his final claim, Mr. Bausch asserts his trial counsel was ineffective for failing to investigate and present to the jury the physical layout of the scene at

the trailer house in December.  Specifically, Mr. Bausch argues that the ceiling on the trailer house would have been seven or eight feet in height, the top rail of the victim's bunk bed was 67 inches high, and he was at the time five feet five inches tall and weighed 215 pounds.  He argues it would have been extremely difficult for him to climb into the top bunk with the victim and, had he done so, it would have make a lot of noise.  Furthermore, the fact that there were several people less than eight feet away means that if Mr. Bausch did climb into the victim's bunk bed, others would have heard the commotion.  See Docket No. 1 at pp. 18-19.  He also argues it would have been difficult for him, standing on the floor, to reach over the top rail of the bed and assault the victim in that way.  Id.

Mr. Bausch does not address the state habeas court's decision in his petition, but in his memorandum in opposition to respondent's motion to dismiss he attackss the state court's findings of fact and application of the law. Docket No. 11 at pp. 23-27.  This court addresses both arguments.

### a.    The State Court's Factual Findings Were Supported

The state habeas court found that counsel *had* elicited testimony along the lines of what Mr. Bausch claimed she had not.  Specifically, the court found there was evidence introduced at trial as to the height of the bed and the height of the ceiling.  Docket No. 5-7 at p. 11.[14]  Photos of the room, the bed,

---

[14] This corresponds with evidence adduced at the habeas hearing.  Bausch v. Young, Civ. 18-158 at p. 252 (HH at p. 45).

and the measurements of the bed were introduced into evidence.  Id.[15]
Counsel established that there was, at most, only about 2 ½ feet between the
top of the bed and the ceiling.  Id.  Counsel specifically argued at trial that it
would have been difficult for an adult male to have crawled up onto the bunk
bed.  Bausch v. Young, Civ. 18-158 at p. 255 (HH at p. 48).

Mr. Bausch testified at the state habeas hearing that at the time of the
December event, he was 5 feet 5 inches tall and weighed about 215 pounds.
Bausch v. Young, at p. 318 (HH at p. 112).  He also stated that the ceilings in
the trailer house where the December event occurred were seven feet high,
though he admitted he had not measured the ceilings.  Id. at p. 329, 342 (HH
at 122).  He testified that the top of the victim's bunk bed was 67 inches high.
Id. at p. 332 (HH at p. 125, 135).  However, he also admitted that there was a
ladder at the end of the victim's bed that he could have stepped up on.  Id. at
p. 340 (HH at p. 133).  Finally, Mr. Bausch admitted that he would have been
capable of climbing into the victim's bunk bed, although it would not have been
quiet or easy.  Id.

The victim testified on cross-examination at trial that her bedroom was
immediately adjacent to the living room and that four people spent the night in
the living room during the December event.  State v. Bausch, at pp. 864-65
(JTT Vol. II at pp. 85-86).

The state habeas court's findings are supported in the record.
Furthermore, although counsel did not introduce evidence of Mr. Bausch's

---

[15] Id. at p. 253-54, 305 (HH at p. 46-47, 98).

height and weight, he was physically present in the courtroom during the trial and the jury could certainly have observed first-hand how tall he was and his girth (Mr. Bausch admits as much in his pleadings herein—see Docket No. 11 at p. 25).  Introducing the actual specifics of Mr. Bausch's height and weight would have added little to the jury's understanding.

Furthermore, the victim *never* testified at trial that Mr. Bausch had gotten into her bunk bed with her during the December event.  State v. Bausch, CRI 13-3072 at pp. 848-53, 864-67 (JTT Vol. II at pp. 69-74, 85-88).  She testified only that Mr. Bausch put his finger inside her privates.  Id.  Therefore, the jury need not have found that Mr. Bausch climbed up into the bunk bed in order to credit the victim's testimony—he could have reached the victim's genitals from a position of standing on the ground or standing on a lower rung of the ladder to the bed.  Id.

### b.    The State Court Properly Applied Federal Law

The state court in analyzing this issue discussed only state court decisions, but those state court decisions are in accord with federal law.  The court concluded that counsel's introduction of evidence at trial and her choice of which arguments to make were sound trial tactics and strategy by an experienced criminal defense lawyer.  See Docket No. 5-7 at p. 11.  As such, the court declined to second-guess counsel's approach at trial.  Id.  The court finds this is a straightforward application of the law under Strickland and its progeny.  Hall, 296 F.3d at 693-98.

The jury did ask a question while deliberating as to Mr. Bausch's height. But even if the jury had doubts about the feasibility of Mr. Bausch climbing into the victim's bunk bed during the December incident, these doubts would not have impacted the credibility of the victim's trial testimony that never placed Mr. Bausch in bed with her. Nor would introduction of further specifics about the bunk bed and Mr. Bausch's size have impacted the conviction for the incident which occurred in March in a hotel room--no bunk bed was involved in the March allegations. Therefore, not only does this court agree with the state court's conclusion that counsel's performance was not deficient, this court additionally finds that Mr. Bausch has not established prejudice.

### 4.    Cumulative Error

Mr. Bausch did not raise the claim of cumulative error as a basis for habeas relief in his petition, but he did raise the issue in his memorandum in opposition to respondent's motion. Docket No. 11 at p. 30. Therefore, the court addresses the argument.

Mr. Bausch argues that although each error of trial counsel by itself might not warrant habeas relief, the cumulative effect of all counsel's errors merit relief. Id. The court notes that, of the four issues raised by Mr. Bausch, only one issue (two combined—grounds 1 and 2) might be characterized as counsel error: the failure to discover and present Celena Ackerman's testimony. With regard to the other two grounds, there was no finding by either this court or the state habeas court that counsel's performance was deficient.

But even if there were two or more counsel errors that could be considered cumulatively, the Eighth Circuit has rejected this argument. Each alleged error of counsel must be considered standing alone; errors are not cumulated and considered together. See United States v. Brown, 528 F.3d 1030, 1034 (8th Cir. 2008) (citing Middleton v. Roper, 455 F.3d 838, 846-51 (8th Cir. 2006) (finding no deficient performance on any of petitioner's four individual claims of ineffective assistance of counsel, and rejecting argument that the four claims should be considered cumulatively to determine prejudice); see also Hall, 296 F.3d at 692 ("a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) ("cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own."); United States v. Robinson, 301 F.3d 923, 925 n.3 (8th Cir. 2002) ("the numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief."); Wainwright, 80 F.3d at 1233 ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). Therefore, this magistrate judge recommends Mr. Bausch's claim of cumulative errors be denied.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting respondent's motion to dismiss [Docket No. 4] and dismissing Mr. Bausch's § 2254 petition with prejudice and without holding an evidentiary hearing.

27

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 21st day of June, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

28